## JOHN C. LAMPLEY *vs.* FRANCIS T. SCOTT.

The doctrine is well established, that a mandatary is liable in all cases for gross negligence only.

Every person is presumed to do his duty, until the contrary is established.

A mandatary is not liable for the loss of an article delivered to him, unless it is proven that he lost it by gross negligence, or that on demand he refused to deliver it.

As a general rule, the statements or admissions made by a party interested in the result of a suit, cannot be given in evidence in his own favor; but all rules of evidence are adopted for practical purposes in the administration of justice, and must be applied so as to promote the ends for which they were designed.

The instances in which the admissions of a party have been received in his own favor, have been so frequent that they may be said almost to constitute a rule, rather than an exception to it.

The statements of a party interested may be received in cases of extreme necessity, when no other evidence is reasonably to be expected.

The necessity must result, not from the accidental failure of evidence in a particular case, but arise in the natural and usual course of human events.

Among the cases in which parties interested have been admitted to testify in their own behalf, may be named that of a party robbed, who is admitted as a competent witness from the necessity of the case, and because no other evidence of the fact can be obtained, or, under ordinary circumstances, would be likely to exist.

The statements made by a mandatary, at the time of a demand and refusal to deliver the property, in which he gives an account of the loss by accident or theft, with the attendant circumstances, constitute a part of the *res gestæ*, and the mandatary is entitled to the benefit of such statements.

Where there would be a failure of justice, and in the ordinary course of human transactions, no other testimony could necessarily be expected; *held*, that these constitute exceptions to the general rule that a party cannot give evidence in his own favor.

Under the circumstances, the court did not err in permitting the party to give evidence in his own behalf.

IN error from the circuit court of Kemper county; Hon. John Watts, judge.

This was an action of assumpsit brought to recover $600, which was handed to defendant in Gainesville, Ala., to be handed plaintiff in De Kalb, Miss., as an act of accommodation.

Lampley v. Scott.

This was proven. Defendant then offered to prove that he was robbed in a swamp between the two places; that as witness passed the swamp he heard some one hallooing, and answered, and defendant came up and said he had been robbed, and how it was done; and further, that he had written a letter to some one, and stated the same thing; that he followed the witness in the stage to Thurmond's, four miles from the swamp, and then got some men to go back with him and hunt for the robbers; that they found his buggy tracks in the swamp, and the track of one man. Defendant then deposed to the same facts in substance. All this proof was objected to, but admitted by the court. Verdict was rendered for defendant, and the cause is brought by the plaintiff to this court by writ of error.

*D. C. Glenn*, for plaintiff in error.

I shall make two points, both of which are entitled to grave consideration, and the last I deem conclusive.

1. The court erred in permitting the witnesses to state the declarations of defendant; he was thus permitted to make evidence for himself. Party to record can never be a witness in a court of common law. 4 Johns. 128; 12 Mass. 358. Proof of loss of paper is not an exception; it is on a collateral point, which does not go before the jury. 2 Ph. Ev. C. & H., notes, 138, n. 122. As to competency in the case, 2 Mar. La. R. 114. Money requires great care even in a mandatary. 3 Mason, 132; 2 Murphy, 373. That the form of action in this case was well founded to sustain our objection to proof offered, see 6 N. Hamp. 537.

2. The next error, and the fatal one, was in permitting the defendant himself to testify. ' The principal authority on which I rely to sustain this point, is the case of *Tompkins* v. *Saltmarsh*, 14 S. & R. 282. In examining this case, it may seem at first to conflict with my first point; but the ruling of the court grew out of the peculiarity of the declaration. It admitted the loss of the money; hence, the court says, the proof was competent to show how lost. Here we do no such thing; we sue in assumpsit; correct. 6 N. Hamp. R. 537. We prove delivery to

45 *

defendant, promise to deliver to us, and a failure, and hence a liability; therefore the proof was not an answer to our pleading, and was inadmissible.

In the case cited Tompkins's declarations were admitted, and then he was admitted as a witness himself. Duncan, J., says, "no member of this court ever doubted the propriety of the the rejection of the defendant on record as a witness. He stood as any other defendant stands, and must make out his case by disinterested witnesses. He could not be permitted to prove that the loss was not by his neglect, carelessness, or mismanagement." p. 282.

Believing the above to be very conclusive, I shall confidently expect a reversal of the case.

*Baldwin*, for defendant in error.

The declarations, acts, and letter were properly admissible. *Schenk* v. *Hutcheson*, 2 N. C. Law R. 432; *Bingham* v. *Cabbot*, 3 Dal. 19, 39; *Boyden* v. *Moore*, 11 Pick. R. 362; *Tompkins* v. *Saltmarsh*, 14 Serg. & R. 275; Ph. Ev. vol. 3, (part 2, H. & C.'s notes,) 211–214 *et seq*. For the same reason and upon the same authorities, the evidence as to the manner, appearance, &c. of defendant, were admissible.

The second question is more novel, but we think equally clear. See *Whitsell* v. *Crane*, 8 Watts & S. 369; Kinn. Quarterly L. C. Oct. 1848, No. 4, p. 210; *Clarke* v. *Spence*, 10 Watts, 335; *Bingham* v. *Rogers*, 6 Watts & Serg. 500; 1 Starkie, Ev. 121, (marg.); Gilbert, Ev. 113; 1 Ventris, 351; 2 Shower, 47; Bull. N. P. 187; 1 Ph. Ev. 139; 2 Starkie, Ev. 681 and notes; 1 Greenl. Me. R. The evidence of defendant was admissible *ex necessitate;* though it be conceded that the general policy of the law is to exclude the testimony of a party, yet this is never upheld where justice would inevitably be defeated by the rule of exclusion in its general application; and accordingly the law makes exceptions of all such cases, *ergo*, proof of loss of paper, of loss of goods by stage or steamboat, &c. It is certainly better that a chance should be afforded of false testimony, than a certainty of a person losing his rights. If the defendant

Lampley v. Scott.

be excluded from testifying, it would usually result, that whenever the bailee was robbed against law, he would afterwards be robbed according to law.

Evidence is continually adapting itself to the necessities of the affairs and business managements of society, and to the exigencies of particular cases. See 14 S. & R. *supra;* also the observations of C. J. Marshall, in 7 Peters, 99; 1 Peters, 51.

If the evidence of Scott was inadmissible, it is submitted, that without such evidence the case was made out on uncontradicted proof, otherwise for defendant; and the court will not disturb the verdict for an error which did not prejudice the plaintiff, and when the same result would follow a second trial.

It is too trite for illustration, that a gratuitous bailee is only responsible for gross negligence. See Pennsylvania cases, *supra.* Here, however, there was no negligence at all.

Mr. Justice YERGER delivered the opinion of the court.

The plaintiff in error brought an action of assumpsit against the defendant in the circuit court of Kemper county. On the trial, he proved that the defendant had received from him a bag of money in specie, at Gainesville, Ala., and agreed to deliver it to D. P. McAllum, at De Kalb, in Kemper county, distant about thirty miles; and that the defendant had not delivered it. The money belonged to the plaintiff, and defendant undertook to deliver it solely for his accommodation, and without reward. The defendant proved, that about one o'clock in the evening on the day after he received the money, he started with the bag of money from Gainesville, in the direction of De Kalb; and after travelling about seventeen miles, he stopped at a man's named Thurmond, out of a shower of rain, and remained there till after supper, and then left for his home, distant about nine miles, on the road to De Kalb.

He then offered a witness to prove that, as the witness was travelling in the stage from De Kalb to Gainesville, and about ten o'clock of that night, while crossing a long causeway, surrounded by woods, and in a dark and obscure place, he heard some one hallooing at a distance, apparently in the woods ahead of the stage. The witness hallooed in reply, and about

the end of the causeway the stage stopped; but the hallooing still continued until the defendant came up from the woods in a buggy, and said he was never as glad to see any one in his life; that he was lost in the woods, but knew he should hear the stage as it crossed the causeway; that he had been robbed at or near the place by two men who were standing on the roadside, one of whom seized the reins of his bridle, and the other presented a pistol at his breast while the other led the horse and buggy, the defendant being in it, into the woods; that the bag of specie belonging to the plaintiff, and a sum of money belonging to the defendant, were taken from him by the men. Witness stated that the night was dark; there had been a hard rain, and he could not see the defendant distinctly, but from the tone of his voice he seemed to be agitated. Defendant followed the stage back to Thurmond's, about four miles; and on reaching there got out of the buggy, took nothing from it, and stated the circumstances of the robbery as before. The plaintiff objected to all this evidence; but the court permitted it to be given, and a bill of exceptions was taken by the plaintiff to the action of the court in admitting it.

The defendant then offered a witness to prove that, when he got to Thurmond's, he got several persons to go with him to the place he had been robbed, to see if any trace of the robbers could be found, and suggested the propriety of getting some dogs to follow the tracks of the robber; that several persons went with him, but without dogs, as none could be obtained, and found the tracks of a horse and buggy from the road into the woods, near where defendant came to the stage; that only one track made by a person was found, which witness did not think was the track of defendant.

The plaintiff objected to this testimony; but the court overruled the objection, and a bill of exceptions was taken.

The defendant then offered another witness to prove, that the the day after the night of the alleged robbery, defendant wrote a letter to the plaintiff, informing him that he, defendant, had been robbed of plaintiff's money and his own, and requested the plaintiff to keep a look-out for the robbers. This letter was produced, and the witness said he was acquainted with the

handwriting of defendant, and did not think the letter was written in his usual hand, but seemed to have been written in a state of agitation and excitement.

All this evidence was likewise objected to; but the objection was overruled, and a bill of exceptions taken by the plaintiff.

The defendant then offered himself as a witness to prove the fact of the robbery, and the circumstances attending it. His introduction was objected to; but the objection was overruled, and his testimony admitted, and a bill of exceptions taken by the plaintiff. A verdict and judgment were rendered for the defendant.

The undertaking of the defendant, as proved in this case, was that known technically in works on bailments as a mandate, which is defined by Sir William Jones to be " a bailment of goods without reward, to be carried from place to place, or to have some act performed about them." Story on Bailments, § 137.

In contracts of this kind, the doctrine seems now to be established, both in England and America, that a mandatary is liable in all cases for gross negligence only. Story on Bailments, § 181.

We recognize the correctness of this rule, and shall adhere to it.

The question then arises, in actions by the bailor on the ground of gross negligence, on whom the burden of proof lies?

Judge Story thinks a different rule might prevail where a *primâ facie* case to support an action of trover is made out at the trial, from what would obtain in an action of assumpsit, or an action on the case, founded on negligence. But he says, "waiving all considerations of this sort, it seems a general principle of the common law that every person is presumed to do his duty until the contrary is established; and on this account, the burden of proof is on the plaintiff to negative this presumption by appropriate proofs." Story on Bailments, § 213.

In the case of *Beardslee* v. *Richardson*, 11 Wend. 85, where a mandatary had received a sealed letter with money in it, to carry from New Orleans to New York, it was held that the

plaintiff was not entitled to recover without showing, either that the defendant had opened the letter, or had lost it by his gross negligence, or that on a demand he had refused to deliver it. We take this to be the correct rule on this subject.

Taking it for granted that a *primâ facie* case of liability was made out by the plaintiff in the record before us, the question arises, whether the court erred in admitting the evidence offered by the defendant to negative the presumption against him.

On this branch of the case, two questions arise. First. Did the court err in permitting, as evidence to go to the jury, what the defendant said and did on the night of the alleged robbery, and the letter which he wrote to the plaintiff on the following day? Secondly. Did the court err in permitting the defendant himself to testify in the cause?

In regard to the first point, it may be remarked, that it is certainly true, as a general rule, that the statements or admissions made by a party interested in the result of a suit cannot be given in evidence in his own favor. But the rules of evidence were adopted for wise and salutary purposes, in order to promote and facilitate the ends of justice. They are founded on general interest and convenience; and in order to adapt them to the actual condition of the business of men, they must conform to the exigencies of society. 14 Serg. & R. 281; 9 Wheat. R. 332.

In the language of an eminent writer on the law of evidence, " All rules of evidence are adopted for practical purposes in the administration of justice, and must be so applied as to promote the ends for which they were designed." 1 Greenleaf on Evidence, 68.

It will, accordingly, be found that to the general rule above-mentioned, courts of justice have admitted many exceptions in practice, in order that it might not defeat the very ends, to promote which it was originally adopted.

The instances in which the admissions of a party have been received in his own favor have been so frequent, that they may be said almost to constitute it a rule, rather than an exception, " that the statements and admissions of a party interested may be received in cases of extreme necessity, where, from the

nature of the case, no better evidence can be reasonably expected."

In Buller's Nisi Prius, the exception in this class of cases is stated in the following language : " A party interested will be admitted, where no other evidence is reasonably to be expected." Buller's N. P. 289.

Starkie lays down the doctrine in a similar manner, but qualifies it by the remark, that " the necessity must result not from the accidental failure of evidence in a particular and isolated case; but it must be general in its nature, embracing a large and definite class of cases, and must arise in the usual and natural course of human affairs." 1 Stark. on Ev. 132. " The law," he further remarks, " has been justly jealous of any extension of the rule, and its operation has consequently been very limited in practice." Ib. Among cases in which the testimony of parties interested has been admitted, may be named that of the party robbed, who under the statute of Winton, had a right to recover of the Hundred the amount of which he was robbed. In this case, he was admitted as a competent witness from necessity, to prove the fact of the robbery, and the thing and value of which he was robbed. Rolle's Ab. 685, 686.

In *Herman* v. *Drinkwater*, 1 Greenl. Maine, R. 27, a plaintiff was permitted to give evidence of the particular contents of a trunk, which he had delivered to a shipmaster·on board his vessel, to be carried to another port, and which on the passage the· shipmaster broke open and rifled of its contents.

In the case of *Clark & Co.* v. *Spence*, 10 Watts, R. 335, it was held in an action against a warehouseman, or forwarding merchant, to recover the value of a lost trunk, that the plaintiff was a competent witness to prove the contents of it. The court says, " this proof is only admitted, because no other evidence of the fact could· be obtained, or under ordinary circumstances would be likely to exist."

Judge Story, in his Com. on Bailments, § 213 (note 1,) commenting on the case of *Beardlee* v. *Richardson*, 11 Wend. R. 25, says that " the statements made by a mandatary, at the time of a demand and refusal to deliver the property, in which he gives an account of the loss by accident, or theft, with the

circumstances attending the loss or theft, are part of the *res gestæ*; and as such, the mandatary is entitled to the benefit of such statements as evidence in his favor on the trial."

A like rule was laid down by the supreme court of Pennsylvania, in the case of *Tompkins* v. *Saltmarsh*, 14 Serg. & R. 275. That case was very similar, in many of its features, to the one before us. Saltmarsh sued Tompkins for some money delivered by him to Tompkins, at Georgetown, in the District of Columbia, and which Tompkins undertook safely to keep and deliver to the plaintiff at Athens, in Pennsylvania. The defendant relied upon the fact that he had been robbed of the money as a defence, and the court holding that a voluntary bailee without reward was responsible for the loss of the goods intrusted to him only in cases of gross negligence, declared that in an action against him, the bailee could give in evidence his acts and declarations immediately before and after the alleged loss, to repel the charge and exculpate himself. " The next best evidence to proof of a thing itself," says the court, "is proof of those circumstances which naturally would attend it. It has been said, this is the party making evidence for himself. It is not; but evidence of circumstances immediately preceding and directly following the stealth. The direct proof is difficult, and not to be looked for. The circumstances that would naturally attend the whole transaction of a man placed in the situation in which the defendant stood in such case from necessity, is proper evidence." We concur fully in the soundness of these views, and think that the testimony offered in this case of the hallooing in the woods, the statements made to the stage passenger in relation to the fact and circumstances of the robbery, what the defendant said and did at Thurmond's when he went back, the attempt to pursue the alleged robbers, the writing of the letter to the plaintiff on the next day, and the letter itself, were all facts and circumstances proper for the consideration of the jury.

The circuit court, therefore, did not err in admitting the testimony contained in the first, second, and third bills of exceptions.

This brings us to the consideration of the second question. Did the court err in admitting the defendant himself to testify as a witness?

It is said it did, because he was interested in the result, and also a party to the record, both of which objections, it is urged, were sufficient to exclude him.

The latter of these two objections to the competency of a witness, we presume, was the natural result of the establishment of the first rule, that a party interested in a suit could not be a witness, because at common law there was hardly any conceivable case in which a party to the record was not interested in the result, either in the matter of costs or otherwise. But however this may be, neither rule is inflexible, and both have been relaxed in many instances.

In the case of *The Queen* v. *Dowell*, 6 Modern R. 119, Lord Holt declared for law, that a party might give evidence in his own cause, " where the nature of the thing allowed him no other evidence."

The rule quoted from Buller's Nisi Prius, " that a party interested, will be admitted, where no other evidence is reasonably to be expected," applies to a party to the record.

In the case cited from Rolle, 685, 686, in the action against the Hundred, under the statute of Winton, the plaintiff was permitted to testify in his own favor. He was admitted, not by virtue of any provision of the statute to that effect, as was suggested in argument, but from the necessity of the case, and because the robbery being done in secret, and in the absence of all other witnesses, the party would have been deprived of the remedy against the Hundred given him by the statute, if his own oath had not been received. Subsequent statutes adopted this rule, and provided that the oath of the party robbed should be received.

Again, we find in the case of the ship *Henry Eubank*, 1 Sumner's R. 400, being an action for salvage, the salvors, although parties to the suit, were admitted as witnesses to all facts deemed peculiarly or exclusively in their own knowledge. But as to other facts they were held incompetent. Judge Story, in this case says, " all the testimony comes from parties in interest, and therefore partakes of the common infirmities of prejudice, suspicion, and feeling, which belong to evidence originating in such sources. Salvage cases constitute one of the class of ex-

cepted cases, from the ordinary rule of evidence, that a party is not permitted to testify in his own cause. But the exception arises from the very necessity of trusting to that or of being left without proof, for in many cases no other persons exist, who can testify to the facts."

In the case of *Clark* v. *Spence*, 10 Watts, 335, and of *Herman* v. *Drinkwater*, 1 Greenl. R. 27, also in the case reported in 12 Viner, 24, before Montagu, B., which were actions against common carriers, the plaintiffs were admitted to prove the contents of their trunks, and the value of them. In these cases, the delivery of the trunks, and their loss, was proved by other evidence, and probably could not have been proved by the party himself, as they were facts of which a party, with ordinary prudence, might have had other evidence. But the contents of a traveller's trunk, consisting usually of his wearing apparel, are things of which no one usually has any knowledge but himself. Hence no other proof could reasonably be expected than his own statement, and therefore the party was permitted to testify from necessity, in order that there might not be a failure of justice.

It will thus be seen, that the courts have made that class of cases where there would otherwise be a failure of justice, and where, in the ordinary course of human transactions, no other testimony could reasonably be expected, an exception to the general rule, that a party cannot give evidence in his own favor.

In these cases, this evidence is received, not as the best kind of evidence, but from necessity, and because it is the best evidence which, under ordinary circumstances, could reasonably and naturally be expected.

It would seem, if any case would constitute an exception to the general rule, it would be one circumstanced as the case before us, in which a bailee without reward is seeking to defend himself against a presumption of gross negligence, and where the facts which constitute his defence could, in the nature of things, be susceptible of no other proof than his own statements. Under ordinary circumstances, he would be the only witness of the facts which constitute his defence. Robberies,

when committed, usually take place in secret, and in the absence of all other persons than the party robbed. Hence no prudence, no foresight, no sagacity, would prompt a man to prepare evidence of a transaction which he himself could not anticipate, and could not, therefore, guard against. To hold, under such circumstances, that a party could not exculpate himself by his own statement of the facts, would in many instances leave him without redress, and bankrupt him in fortune and character for simply undertaking an act of ordinary kindness.

We would not hesitate to pronounce this case came within the exception, but for the decision of the supreme court of Pennsylvania in *Tompkins* v. *Saltmarsh*, before referred to. There the court used the following language : " No member of this court ever doubted of the propriety of the rejection of the defendant on the record as a witness. He stood as any other defendant stands, and must make out his case by disinterested witnesses."

Yet the court in that case permitted the statements of the defendant that he had been robbed, and the acts done about the time of the alleged robbery, to be given in evidence in his favor. In principle, we can see no reason for such a distinction. Surely the statements of a party made without oath, without a cross-examination, without being subjected to any of the usual tests provided to elicit truth in the examination of witnesses, are as objectionable as the statements of the same party made under the sanction of an oath, in the presence of the jury, and when he is subjected to a cross-examination. Nothing but necessity ever authorized their statements to be given in evidence in any case ; and the same objections apply equally to the admission of the statements made by him at the time of the alleged robbery, as to the evidence before the jury. In either case, the party makes evidence for himself. But it is held, that extreme necessity justifies a relaxation of the rule. Upon the whole, we think that case, on this point, is opposed to the weight of authority, and is not founded upon such reasons as should make us forego our own convictions of the proper rule. We, therefore, hold that the court below, under

the circumstances of this case, did not err in admitting the defendant as a witness. We must, therefore, affirm the judgment.