McNabb *vs.* Lockhart & Thomas.

No. 67.—Noah McNabb, plaintiff in error, *vs.* Lockhart & Thomas, defendants in error.

[1.] The undertaking by a party to receive money and deliver it to another without reward, is a mandate; and in contracts of this sort, the mandatory is liable for gross negligence only; and the burthen of proof is thrown upon the plaintiff, at least, to make out a *prima facie* case.

[2.] Negligence is ordinary, less than ordinary, or more than ordinary; and he who omits even slight diligence, fails in the lowest degree of prudence, and is deemed grossly negligent, viz: omitting that care, which even the most inattentive and thoughtless men never fail to take of their own concerns; his conduct being, in legal language, *dolo proximus*, or amounting almost to a fraud.

[3.] He who accepts a burden gratuitously, is not to be dealt with as one who receives a benefit; and whether he has been grossly negligent, is a fact to be determined by the Jury, under all circumstances of the case.

[4.] Great latitude is allowed to Counsel, both by the Common Law and the Courts. of this country, in forensic discussions; and liberty of speech must not be too much abridged.

[5.] What a party says, as to the ownership of money, when he delivers

a packet to be carried from one place to another, is admissible as a part of the *res gestae.*

[6.] In an action against a voluntary bailee for the loss of money by carelessness and negligence, the defendant may give in evidence his own acts and declarations, immediately after the loss, to repel the charge.

[7.] Every action is properly brought in this State, regardless of its form or name, which sets forth plainly, fully and distinctly, the plaintiff's cause of action.

[8.] In an action against a mandatory, for the loss of money intrusted to his care, he cannot be sworn as a witness in his own defence, that is, to prove that the loss was not occasioned by his own neglect, carelessness or mismanagement.

[9.] Where, from the nature of the case, other evidence was not to be obtained, and there would be a failure of justice without the oath of the party, ought he not to be allowed to testify? *Quere.*

[10.] Where a depositary is sued for the loss of money, and it is proven by the plaintiff, that immediately after, he was buying and selling, and handling funds, in order to create a presumption that the defendant had embezzled the fund, it is competent to show, by way of rebuttal, his pecuniary circumstances before the alleged loss.

[11.] In a suit for the loss of money, committed to the custody of the defendant, involving the general character of the party, as it does, and going directly to affect it, it is competent for the defendant to give in evidence his general character for honesty and trustworthiness.

Assumpsit, &c. in Dougherty Superior Court. Tried before Judge PERKINS, May Term, 1855.

This was an action brought by Lockhart & Thomas against Noah McNabb, for a sum of money entrusted to his care, and which he never delivered, but alleged had been lost. The following evidence was submitted and exceptions taken. Error has been assigned on all of these exceptions:

The depositions of NELSON P. FOSTER: In the latter part of December, in the year 1850, or in the early part of the following January, 1851, I received from Mr. John Jackson, then a merchant in Albany, in said county of Baker, Thirty-four hundred and eighty dollars, in bank bills, three thousand of it done up in five hundred dollar parcels and the remainder loose; this was done in said Albany; said John

McNabb *vs.* Lockhart & Thomas.

Jackson told me at the time, the money belonged to Lockhart & Thomas; the plaintiffs in this case, and requested me to deliver it to them in Apalachicola, Florida, which I promised to do, as I was going there on a Steamboat of which I was Captain; but the water in the river (Flint) fell so much that I was detained on the way two or three weeks; and seeing that I would not reach Apalachicola in some time, I delivered all the money to James G. Johnson, then a merchant in Newton, in said Baker County, in obedience to the annexed order, signed by Lockhart & Thomas, and took said Johnson's receipt, which is also hereto annexed. This receipt shows the date of the transaction, and I would state that to be about the time, from my recollection alone.

I know that the said money belonged to said Lockhart & Thomas, only by being told so by said Jackson, from whom I received it. I know the amount of it, because I would not give my receipt for it until I had counted it; and said Jackson broke the package to enable me to count it, which I did in his presence. The seals of the package were, however, as well as I recollect, broken before I saw it, and was tied up with a string.

If the plaintiff's Attorneys, or either of them, ever mentioned this case, or anything in relation to it, to me or in my hearing, I do not remember it. Before my arrival at Apalachicola, a few days after I delivered the money to said Johnson, as stated in my answer to the direct interrogatories, I informed Mr. Thomas of a rumor which I heard on my way down, that the money had never reached Bainbridge, and that the defendant, then a stage driver, said that he had lost it. I remember no further conversation as ever having occurred between said Thomas and myself, on the subject, at any time. Since, Dr. Lockhart told me that he wished me to answer, some interrogatories which had been taken out for me to answer, in relation to the delivery and the amount of the money in question. I promised to do so, and he showed me to the place where I am now, before the Commissioners; he

then left immediately. This is all the conversation I ever had with him on the subject. There has not been, and is not now, any person present at my examination, except the Commissioners, Josephus Echols and John J. McKindree. I did not know who the plaintiff's Attorneys were until this examination commenced, and I saw their names to the interrogatories; I never received a letter, nor even a message of any kind, from any person in reference to said money; I know nothing, whatever, about the taking out of the interrogatories, nor know how they came to be taken; I suppose, however, that they were taken out for the purpose of making me a witness for the plaintiff.

To the reading all of that portion of said answers, as giving the sayings of John Jackson, defendant, by his Counsel, objected; which objection the Court over-ruled, and defendant excepted.

To which answers was the following receipt and order, copies of which are as follows:

STEAMER ALBANY, February 3, 1851.

Received from Nelson P. Foster, Captain of the Steamer Albany, Thirty-four Hundred and Eighty Dollars, for Lockhart & Thomas, of Apalachicola, Fla.

JAMES G. JOHNSON.

APALACHICOLA, February 3, 1851.

Captain Foster, of the Steamer Albany, will please pay Mr. J. G. Johnson Thirty-four Hundred and Eighty Dollars, received from Mr. John Jackson, of Albany, Ga., to be delivered to us, and his receipt for the same shall be binding on us.　　　LOCKHART & THOMAS.

JAMES G. JOHNSON: The receipt annexed to the answers of Foster was the one given by him to Foster, and that he received the money mentioned in the receipt, and that he delivered to the defendant all the money he received; counted four or five packages, and each of them counted, contained

five hund: ed dollars; and for that reason he supposes that all the packages contained the same amount, except one which counted $480; there were six or seven packages; those he counted held out. He delivered the packages to be delivered to John M. Potter, of Bainbridge, and defendant undertook to deliver it, and was informed of the amount and consented to take it; and said he would not carry any more money, but upon some other conversation, finally agreed to take the money; at first, he told Johnson he did not intend to carry any more money; Johnson told him he was sorry for it, and after some conversation, consented to carry it.

Defendant proposed to ask Johnson, in his cross-examination, if John Montgomery had not told him, the same morning that the money was delivered, that he had a message to him from McNabb, and that was, that he had lost the money; that he wished him (Johnson) to go and look in the stables and down to the river for the money; which question the plaintiff objected to, and which objection the Court sustained; to which ruling, the Counsel for the defendent excepted.

The depositions of JOHN M. POTTER: Defendant had delivered no money to me since the 7th day of February, 1851; I do not know that the defendant promised to receive from James G. Johnson of Newton, and deliver to me at Bainbridge, as the agent of plaintiff; and as before stated, he has delivered no money to me since the 7th day of February, 1851. The defendant was stage driver in the employ of F. K. Wright. There was no promise made to deliver any money to me as agent for plaintiff; nor was I to pay defendant any thing for bringing the money to me.

Defendant has frequently brought packages of money safely to me, and conveyed packages from me to Newton, while employed in driving the stage between Bainbridge and Newton; have never lost any thing through him nor known of any others losing, except the plaintiff. I know nothing more that would benefit the defendant.

In all cases, when I have handed defendant packages of money to be conveyed to Newton, he has placed them care-

McNabb vs. Lockhart & Thomas.

fully in his pocket, generally in the breast of his coat.   In other respects, I have thought him careless; my opinion of him was formed from all transactions I had with him.

The plaintiff closed his case.

Defendant then moved a non-suit, which motion the Court over-ruled, and defendant excepted—1st. Because the plaintiff had no right to recover in this form of action, but if he had any remedy, it was by action of trover.   2d. Because it was shown, by the evidence, that the money was lost, and the plaintiff had shown no negligence on the part of defendant. 3d. Because the plaintiff had not alleged in his declaration, nor proven by the evidence, gross neglect in the defendant; or, in fact, any negligence whatever, which is necessary. 4th. Because the evidence showed that it was delivered to a mail carrier, which was contrary to public policy, and a fraud upon the law.

## EVIDENCE FOR DEFENDANT.

Depositions of JOHN MONTGOMERY: He was at the ferry when the defendant came up; it was about the last of February, he thinks, and about nine o'clock in the morning.   Defendant came on horse-back, in a gallop, and in a hurry; and from the appearance of his horse, he had rode very fast. Defendant told witness he had lost some money that Mr. Johnson had sent by him to carry to Bainbridge, and that he had come back to hunt it.   He told witness, if he found that money he would never be caught carrying money for any body else, as long as he lived.   He requested witness to go and tell Mr. Johnson that the money was lost, and for him (Johnson) to go and hunt about the stables where he (defendant) had been.   He then told witness that he would return and search down the road, and that he was sorry that he had no one to attend to the stage, that he might look better and longer for it.   Witness says that there was something unusual about his manners; he rode by witness without speaking to him—a thing which he never did before—and kept looking

from one side to the other of the road, and appeared to be very uneasy about something.   Witness was sitting about 60 feet from the river, on the other or east side, when defendant rode by him; and when defendant came to the bank of the river, he appeared frustrated and looked up and down the river, and then turned and looked to witness, when witness asked him what was the matter; he then told witness what has been stated above about the money; he remained with the witness five or ten minutes.   Witness has answered what message was sent by him, and says that he delivered the message to Mr. Johnson.   Defendant said he must return to the stage, for he had no one to attend to it for him, and he left witness to go back to the stage, as he said; witness has stated, already, the circumstances, as nearly as he recollects, of defendant coming to the river.

JAMES G. JOHNSON : Swore, that Montgomery, the same morning that the money was said to be lost, came and told him what McNabb had said to him about the loss of the money, and that he wished him to go and look in the stables for it; and he received the message from Montgomery between breakfast and dinner hours of the same morning that the money was delivered; does not recollect the exact time of the day.

The depositions of JOHN M. POTTER : On the day the package was lost, the stage arrived in Bainbridge about 4 o'clock, P. M. as well as I can recollect, which was later than usual.   On its arrival, Mr. McNabb came to me and asked me if I knew anything of a package from Newton; he said one had been handed him to bring to me, and it was missing or lost. He discovered that it was lost after he had passed a road leading to a ferry near Maples', at which point a passenger got off, who was sitting on the box with him.   As soon as he discovered that the package was gone, he said he turned about the stage and went back to the ferry at Newton, and called to some one to go to Johnson's and tell him that he had lost the package.   I think he said, to say to Johnson to

go to the stables and look.   I understood it was a package, and but one; and he came to me as soon as the stage arrived.

I have always thought favorably of his character and of his trustworthiness, though, at times, I have thought him a little careless.

I have no recollection of the defendant telling me the money was lost by his carelessness.   I think that something was said about the package being put in his outside pocket; cannot say that the pocket was exposed.   He appeared uneasy and anxious about it; cannot say that he proposed to me to go and hunt it.   He went on, I think, the same day, to Quincy, with the stage.   Can't say that I know that he loves money better than other people.   I think he kept a livery stable here, or was connected with one.   I think, since the package was lost, he sold a negro fellow to John M. Cole; and after the package was lost, I think he quit driving the stage.   Soon after the package was missing, he was here in Bainbridge, I think for some time, and dressed well, and attended balls.   I thought him prudent, but not remarkable close with his money.   During a part of the time he lived in Bainbridge, he drove fine horses; and he lost a horse for which, I think, he asked a large price—a bay horse, I think—price some three hundred dollars.   Soon after the loss of the package—a few days—cannot recollect how many, he went from Bainbridge towards Tallahassee, with a pair of horses and a buggy.   I remember seeing him at a ball on the 14th of February, 1851; I cannot say that it was the first time he had done so.   Can say, that at the time the package was missing, he showed some uneasiness and anxiety about it; that shortly after, he left the stage line, and not much was said by me on the subject.

The depositions of WILLIAM A. MOTT:   Mr. Lockhart, of the firm of plaintiffs, had a conversation with witness about the loss of the money, the subject-matter of the above suit, in Bainbridge, shortly after the money was lost.   Mr. Lockhart asked witness what he knew of the character of one James Woodall, of Baldwin County; witness then told said

McNabb *vs.* Lockhart & Thomas.

Lockhart, that said Woodall was a trifling looking man, and sometimes thought to be crazy.   At the same time, Mr. Lockhart asked witness about defendant ; witness replied that he had not been acquainted with defendant but a short time, and did not know what sort of a man defendant was.   Mr. Lockhart then told witness, that as he (witness) lived in Baldwin County, if he would detect the matter, he would pay him five hundred dollars ; and requested witness, if he saw Woodall paying any money about Milledgeville, to notice it and write to him, (Lockhart,) but witness did not see Woodall in 6 or 7 months after this.

The inference that witness drew from the conversation of Mr. Lockhart, as before stated, was, that Lockhart felt that there was a probability that Woodall had got the money ; as said Lockhart said that said Woodall was on the box of the stage with the defendant on the trip that the money was lost. Both plaintiff Lockhart and defendant asked witness to keep an eye out and see if said Woodall handled any money, and write to them ; did not particularly watch the conduct of said Woodall ; but when he did see him, Woodall had a twenty dollar bill and some other money, and was very drunk.   Witness thought at the time, that the money was on the St. Mary's Bank—did not inform the plaintiff of the fact.   Said Woodall is any thing but a moral man—is a drunken, intemperate man, and is thought, by many, to be deranged at times.

Witness cannot say that the money he saw Woodall have, was the money that belonged to plaintiff.   Mr. Lockhart told witness, in the same conversation, that he did not believe that the defendant had lost the money ; that it was too large an amount to be handled carelessly.

WILLIAM FARNSWORTH : Says that he was mail stage agent at the time, of that part of the road over which defendant drove, and that he recollects the coat; that it was the one he usually wore when driving the stage, and that he knows of no other coat worn by defendant ; had an inside breast pocket, but the bottom of it had been cut out before the loss of the money, in consequence of having adhered by having a piece

of india rubber melted in it, and which closed up the pocket and caused him to have to cut it out. The defendant then offered to prove, by Farnsworth, his character for trustworthiness, and that the defendant was in good circumstances, pecuniarily, before the loss of the money, to which plaintiff objected; and the Court sustained the objection and ruled out the evidence; to which the defendant excepted, and alleges error.

Defendant then proposed to prove by said witness, Farnsworth, that the defendant left the stage line for the purpose of attending to his own or private business, and that the arrangement was made for him to leave previous to the loss of the money. To which plaintiff objected; and which objection the Court sustained, and ruled out the testimony. To which the defendant excepted.

JAMES G. JOHNSTON: Says the coat the defendant had on was a worsted sack coat, with side pockets on the skirt, and usually worn by the defendant; does not know the depth of the pocket. When the witness gave the money to the defendant, he put it in his breast side pocket, and immediately took it out and put it in the right hand outside pocket of his coat, and that was the last that he saw of the money; cannot say that any of the package showed above the pocket; it was a large package; too large to be carried in the pantaloons pocket; and upon the return of stage and defendant from Bainbridge he saw the coat, which was the same one that he had on when he received the money, and the inside breast pocket was cut out, in which he first put the package when witness handed it to him.

Defendant then offered to introduce himself as a witness, to prove the loss of the money, and the circumstances under which the loss took place. To which plaintiff objected; which objection the Court sustained, and the defendant excepted, and alleges the same as error.

The testimony being closed, Counsel for the plaintiff addressed the Jury; and in the concluding speech of the plaintiff's Counsel, he stated to the Jury that it was proved that the defendant had but one coat before the loss of the money;

McNabb *vs.* Lockhart & Thomas.

and soon afterwards, he was purchasing and selling horses· and buggies, and negroes, and livery stable. Counsel for defendant objected to the statement, as not being in proof, plaintiff's Counsel insisting that it was. Defendant's Counsel then asked the Court to correct plaintiff's Counsel, when. the Court stated, that as Counsel differed as to the testimony, each one insisting as being right, he would leave it to the· Jury; and Counsel for plaintiff continued his argument and repetition of said statement. To which refusal, said defendant excepted, and alleges the same as error.

The Court then charged the Jury. To all of which charge· and refusal to charge, defendant excepted. Which charge and refusal to charge appear, in full, in the rule *nisi* for new trial.

The Jury then returned a verdict for the plaintiff; whereupon, Counsel for defendant moved for a new trial on the grounds—

1st. Because the Court erred in not charging the Jury,. that a mandatory was only bound to slight diligence and such care as he took of his own goods.

2d. Because the Court erred in all the charges as given.

3d. Because the Court, in lieu of the charge as given, should have charged the Jury, that a stage coachman, without pay, is not liable, unless there has been great carelessness in his conduct.

4th. Because the Court refused to charge the Jury, that sending the package by a stage driver, without pay, and who· was carrying the U. S. Mail, was illegal and a fraud upon the law.

5th. Because the Court permitted the plaintiff's Counsel to make statements to the Jury, while in conclusion,. as having been proved, which was not warranted by the testimony; and refused to correct him.

6th. Because the Court erred in permitting the sayings of John Jackson, as sworn to by Foster, to go in evidence.

7th. Because the Court erred in refusing to permit defend--

ant to show, in his cross-examination of James G. Johnson, that he was informed by Montgomery of the loss of the money by defendant, and requested to look for it.

8th. Because the Court erred in over-ruling the defendant's motion for a non-suit.

9th. Because the Court erred in not permitting the defendant to show, by James G. Johnson, that it was with great reluctance that the defendant took the money, and that it was through his, witness', earnest persuasion that defendant took the money.

10th. Because the Jury found a verdict contrary to evidence, and contrary to Law and Equity.

11th. Because the Jury found contrary to the weight of evidence.

12th. Because the Jury found without evidence.

13th. Because the verdict is inequitable, erroneous and contrary to public policy.

14th. Because the Court erred in over-ruling the motion of defendant, to be sworn as a witness to prove the loss of the money and the circumstances connected with it.

MORGAN; STROZIER, for plaintiff in error.

R. F. LYON, for defendants in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] [2.] [3.] We deem it unnecessary to notice, separately, the various assignments of error upon the charge of the Court. The Court instructed the Jury, in substance, that the undertaking by a person to receive money and deliver it to another, without reward, is a mandate; and in contracts of this kind, the mandatory is liable for gross negligence only; and the burthen of proof is thrown upon the plaintiff, at least, to make out a *prima facie* case. That negligence was ordinary, less than ordinary or more than ordinary ; and

McNabb *vs.* Lockhart & Thomas.

that he who omits even slight diligence, fails in the lowest degree of prudence, and is deemed grossly negligent; that is, omitting that care which even the most inattentive and thoughtless men never fail to take of their own concerns. That gross negligence was *dolo proximus*, amounting almost to a fraud. That he who accepts a burden gratuitously, is not to be dealt with as one who receives a benefit; and whether the defendant had been grossly negligent, was a fact to be determined by the Jury, under all the circumstances of the case.

As a whole, we think the charge unexceptionable; and that it covers, substantially, all the requests which were made by the defendant.

[4.] The next assignment of error is, that the Court permitted plaintiff's Counsel to make statements to the Jury, while in conclusion, which were not warranted by the testimony; and refused to interpose when called upon to do so.

Upon looking into the record, we are obliged to say, that while there was some evidence as to the points respecting which Counsel was addressing the Jury, yet, the facts were rather over-stated; not sufficiently so, however, to authorize a new trial on that ground.

There is, moreover, an inherent difficulty upon this subject, under the Act of 1850, which forbids a Judge, either during the progress of the trial or in his charge to the Jury, to express or even to intimate his opinion as to what has or has not been proved. Suppose Counsel insists that such and such facts have been proved, how can the Court undertake to correct him without violating this Statute?

Great latitude, after all, is allowed to Counsel, as well by the Common Law as by the Courts of this country, in forensic discussions. And it will not do to abridge liberty of speech too much; "no pent up Utica" is the motto, certainly, in republican governments.

As the members of Congress are wisely protected by the Constitution of the United States, from being called to account for any thing said in debate, so Counsel, in their place,

in the discharge of professional duties, may use language, if pertinent to the cause, which would be considered wholly indefensible elsewhere.   There is a limit, however, to this privilege.   And respectable Counsel, unless inadvertently, will never indulge in speaking to facts not in evidence ; or in confounding inferences and opinions with facts.   Should this practice be deliberately and habitually pursued, while it is, doubtless, the duty of the Court to prevent any such abuse in a plain and palpable case; still, such offenders should be held amenable to a just, and often more efficacious, punishment : and that is, the discountenance of their professional brethren, whose frown of disapprobation is the surest of all inflictions to a high-minded lawyer.   And such only should be permitted to occupy a place at the bar.

[5.] We think the Court was entirely right in suffering the witness, Nelson P. Foster, to testify as to what John Jackson said to him about the ownership of the money, at the time the packet was delivered to the witness to be carried to Apalachicola.   It was a part of the res gestæ.

[6.] We hold it was error in the Court below, not to allow the defendant to show, upon the cross-examination of James G. Johnson, that John Montgomery had told him, the same morning that the money was delivered to the defendant, that he (Montgomery) had a message to him from McNabb : and that was, that he had lost the money, and that he wished him (Johnson) to go and look in the stables, and from thence down to the river, for the money.

Montgomery swears that McNabb rode hastily back to the river, seeming much disturbed, and communicated to him the loss of the packet, assigning as a reason for not going back to the stables himself, that he had left the stage, with the mail in it, with no one to take care of it.   He begged the witness to notify Mr. Johnson of the occurrence, and ask him to make search for the money.

It is contended that to allow this proof, is to permit the party to manufacture evidence for himself.   But this is not true.   It is the evidence of circumstances attending the trans-

action.   Direct proof of the loss of this money, is not to be expected.   The circumstances, therefore, that would naturally attend or characterize the conduct of a man ·placed in the situation in which McNabb stood, is, from the necessity of the case, proper testimony.

No man would be the bearer of a packet of money without reward, and at the risk of reputation and property, if he were compelled to prove the theft or loss by eye-witnesses.   It would be unreasonable to look for such proof.

The conduct of the party, in connection with what he says —in other words, concurrent acts and declarations, should be received in exculpation, for what they are worth.   It can only be ascertained, from such circumstances, whether the bailee was guilty of gross neglect or not.   That nothing that a man says or does can be given in evidence to support his own cause, is a good general rule.   It has, however, like all other general rules, exceptions ; otherwise, better without the general rule.

In *Sampley vs. Scott*, (24 *Miss. Rep.* 528,) the Court say : " It is certainly true, as a general rule, that statements or admissions made by a party interested in the result of a suit, cannot be given in evidence in his favor.   But the rules of evidence are adopted for practical purposes in the administration of justice, and must be applied in such a way as to promote the ends for which they were designed.   And the Courts have, therefore, admitted many exceptions to the above rule.   The instances in which the statements or admissions of a party have been received in his own favor, have been so frequent as to constitute it almost a rule rather than an exception, that they may be received in cases of extreme necessity, where, from the nature of the case, no better evidence can be reasonably expected." (*Citing Buller's Nisi Prius*, 289.   1 *Stark. on Ev.* 132.)

Judge *Story* says that the statements made by a mandatory, that the letter delivered to him with money in it, had been lost by accident or stolen from him, with the circumstances attending the transaction, ought to be deemed a part

of the case, so as to entitle the mandatory to the benefit of the statement at the trial, as a part of the *res gestæ*, leaving it to the Jury to disbelieve the statement and to find the defendant guilty of gross negligence, if the circumstances did not, in their judgment, repel it. (*Story on Bailments*, §213, *n.* 1.)

We concur, fully, with the foregoing views, and think the testimony, upon this head, was improperly withheld from the Jury.

[7.] We see no error in the fifth assignment, but affirm the judgment of the Court in over-ruling the motion for a non-suit. Every action is properly brought in this State, regardless of its *form* or *name*, which sets forth, plainly, fully and distinctly, the plaintiff's cause of action. In this instance, it is wholly immaterial whether the suit be trover, assumpsit or case. It is a general principle of the Common Law, that every person is presumed to do his duty until the contrary is established. The burthen is, therefore, upon the plaintiff, to negative this presumption. The non-suit should not have been awarded.

One of the grounds upon which the new trial was asked, and the not granting which is assigned as error is, in not permitting the defendant to show, by James G. Johnson, that it was with great reluctance that he (McNabb) took the money; and that it was through the earnest persuasion of witness that he did take it.

The record does not sustain this exception; on the contrary, it shows that the witness, Johnson, testified that the defendant at first declared, that he did not intend to carry any more money. Johnson told him he was sorry for it; and upon farther conversation, he finally agreed to take it.

[8.] Ought the defendant, himself, to have been sworn as a witness?

In *Dibble vs. Brown & Haynes*, (12 *Ga. R.* 217,) this Court held, that the evidence of the plaintiff in an action against a common carrier, for the loss of his trunk, was admissible to

McNabb vs. Lockhart & Thomas.

prove its contents, provided there was no other evidence to establish the fact. And this evidence was admitted, not upon the ground that the defendant had committed spoliation upon the property; or *in odium spoliatoris*, but upon a policy *in favorem justitiæ* springing out of the necessity of the case and the nature of the subject. And this doctrine is abundantly sustained by authority. An attempt has been made to deny its application in cases of *necessity* alone, and in the absence of *fraud*. But the attempt thus to restrict it, has proved unsuccessful.

Would the admission of McNabb be a further and dangerous innovation upon that Common Law rule, that no person shall be a witness in his own case? The Mississippi Court, in the case already cited, held that it would not, and allowed the defendant, in a case precisely similar in all respects, to be sworn. And while I have concurred with my brethren in affirming the judgment of exclusion in the Court below, further reflection and examination have tended rather to weaken than confirm my first impressions. If a party, without benefit or reward, having undertaken to do a favor for a friend, and without any other evidence as to how the casualty arose, cannot be allowed to give evidence in his own favor, a failure of justice is inevitable. No prudent man should ever carry a letter or packet for another. Suspicion will attach, and the most upright man will be more than punished for any neglect of which he may have been guilty, by the mortification which he feels. Justice would seem to demand, that when the voluntary depository admits that, somehow, he did lose the money, that he should have the privilege of stating exactly the *quo modo* he lost it. His narrative is for the consideration of the Jury. Why exclude from them the only testimony that can shed a ray of light upon the transaction?

[9.] The books and the daily practice of the Courts, abound in instances, where the oath of the party is received as evidence in his favor, because it is essential to the purposes of justice. He proves that the books of account produced in Court, contain his original entries ; the loss of a deed out of his custo-

dy, so as to let in secondary evidence ; and so of other mat-ters, of which the books of practice abound in examples. To rebut this proposition, we are met with some conjectural no-tions about *public policy*. For myself, I utterly repudiate all such fanciful distinctions. I am satisfied they will not abide the test of investigation.

Here is a bailee, without reward, seeking to defend him-self against a presumption of gross negligence, or *something worse;* and where the facts, which constitute his defence, could, in the nature of things, be susceptible of no other proof than his own statements ! My judgment refuses to acquiesce in such a doctrine.

[10.] Understanding the bill of exceptions, as we do, that the testimony, that McNabb, immediately after this transac-tion, was seen in the possession of property, buying and sell-ing, &c. was brought out by the plaintiff, in his cross-examina-tion of John M. Potter, we are clear, that by way of rebuttal, the defendant should have been permitted to show his pecu-niary circumstances before the alleged loss, and his reason for leaving the stage line, the fact of his doing so being adduced as a circumstance to inculpate him.

[11.] The main ground upon which we propose to put the new trial, in this case, is the rejection of the testimony of William Farnsworth, as to the good character of McNabb for honesty and general trustworthiness. In civil cases, such evidence is always admissible, when the nature of the action involves the general character of the party, or goes directly to affect it. And whenever a particular trait of character is involved in the matter charged against the defendant, there the character of the party, in that particular trait, is put in issue, and may be given in evidence. We cannot doubt but that the character of the defendant, for want of integrity and trustworthiness, was put directly in issue by the action brought against him; and from the very nature of the case, and the difficulties surrounding it, that character must constitute his main, if not his only defence. Entire liberty should have been extended to the defendant upon this point. The time will

come, and we are fast verging to it, when the administration of justice, both civil and criminal, will turn very much upon the character of the litigating parties, their testimony being mainly looked to for the establishment of the facts upon which the law will pronounce its judgments.

Upon the whole, we think it best to remand this cause for a re-hearing. It is a mere matter of delay to the plaintiffs; if the defendant lost or embezzled their money. But if he be innocent, it is a great cruelty to make him liable for the casualty.